296 Ga. 364
FINAL COPY

S14A1286.  BABBAGE v. THE STATE.
S14A1287.  HALL v. THE STATE.

HUNSTEIN, Justice.

Appellants Mason Babbage and Samuel Hall were jointly tried and convicted of murder, armed robbery, and related crimes in connection with the October 2011 death of Breyon Alexander.  Both men were sentenced to life in prison without the possibility of parole plus consecutive terms of years, and each now appeals his convictions and sentences.  Finding no error in regard to either appellant, we affirm.[1]

---

[1]Appellants, together with co-defendant Phillip Kennebrew, were indicted by a DeKalb County grand jury on counts of malice murder, felony murder, aggravated assault, armed robbery, false imprisonment, and possession of a knife during the commission of a felony.  Hall was additionally charged with possession of a firearm during the commission of a felony and firearm possession by a convicted felon.  The three men were jointly tried in August 2012 and found guilty on all counts.  Babbage was sentenced to life without parole for malice murder plus various consecutive and concurrent terms of years for armed robbery, false imprisonment, and weapon possession, for a total sentence of life plus 25 consecutive years; the remaining counts merged or were vacated as a matter of law.  Hall was sentenced to life without parole for malice murder plus various consecutive and concurrent terms of years for the counts that were not merged or vacated, for a total sentence of life plus 45 consecutive years.  Both appellants filed timely motions for new trial, which they each subsequently amended, and, following a joint hearing in October 2013, the trial court denied both motions on December 30, 2013.  Each appellant filed a timely

Viewed in the light most favorable to the jury's verdicts, the evidence adduced at trial established as follows. Around midday on October 18, 2011, Marvin Evans heard a loud noise from the back of his second floor DeKalb County apartment. From his balcony, Evans observed a white Chevrolet Malibu with its back side facing the apartment building. Evans saw two light-skinned black men, one beside the car and the other, whose hair was worn in dreadlocks, running toward the car. Proceeding downstairs to investigate, Evans passed a bald, light-skinned black man coming up the stairs. At trial, Evans identified Hall as the man he passed on the stairs.

In the downstairs apartment, Evans discovered the victim hogtied and bleeding, with several teeth knocked out of his mouth. The apartment had been ransacked. Evans called 911. Though conscious when Evans discovered him, the victim died from his injuries soon thereafter. His injuries included both blunt and sharp force injuries, consistent with having been stabbed and beaten with the butt of a gun. A knife was found in the apartment's patio area.

There were no signs of forced entry into the apartment, from which

notice of appeal in January 2014, and both appeals were docketed to the September 2014 term of this Court. Babbage's appeal was orally argued on September 9, 2014, and Hall's appeal was submitted for decision on the briefs.

numerous items of electronic equipment, firearms, and a large sum of cash had been taken. Among the stolen items were a 50-inch flat screen television, a 42-inch television, a 12-gauge shotgun, two laptop computers, two Playstation gaming systems, an Xbox gaming system, a .40 caliber Smith and Wesson handgun, two .380 caliber handguns, and three other guns. The victim's roommate testified that the victim sold drugs from their apartment and for this reason was always careful about whom he allowed inside.

As of the time of the crimes, Babbage had known the victim for six to seven years. Babbage had stayed in the victim's apartment the week prior to the crimes, had been in the apartment many times, and knew that there were guns, money, and marijuana there. Babbage had sold a 50-inch TV to the victim a few weeks prior, and there was testimony that Babbage had recently demanded the victim sell it back, a demand the victim had refused. A search of Babbage's home uncovered a pair of black pants, identified as belonging to Babbage, bearing blood stains matched to the victim and DNA matched to Babbage. Babbage's wife owned a white Chevrolet Malibu, and there was evidence that Babbage had driven that vehicle on the morning of the crimes. A search of the Malibu uncovered fingerprints on the exterior of the front passenger side door

belonging to Hall, a friend of Babbage.

Hall's girlfriend, Erin Tew, testified that, on the day before the crimes, she had overheard a telephone conversation on speaker phone between Hall and Babbage, in which they discussed "hitting a lick" on a man who had molested Babbage's niece and who had guns and drugs. The State established that, at the time of the murder, the victim was under indictment for child molestation.

A search of the home Hall shared with his girlfriend uncovered a 12-gauge shotgun, a .380 caliber handgun, 12-gauge shotgun shells, and .38 caliber live rounds. In the back yard of the home, investigators also discovered a makeshift barbeque grill containing ashes and charred clothing remnants. The son and daughter of Hall's girlfriend, who also lived in the home, testified that when they returned home from school on the day of the crimes, Hall, Babbage, and an unknown third man had "cool" electronic equipment at the house, which Babbage loaded into his car the following day. They also testified that on the same day Babbage and Hall had cut off their hair and all three men had used the backyard grill to burn clothing.

Tew testified that, on the day of the crimes, she received two text messages from Hall, the first stating, "I think we f**ked up," and the second

stating, "I think we killed somebody." Immediately thereafter, she received electronic photographs showing a sink full of dreadlocks and Hall, who, though previously having worn dreadlocks and full facial hair, was now bald and clean-shaven. On the evening of the crimes, Tew testified, Hall told her that "it wasn't even worth it" and that "he didn't even get anything."

A cigarette butt recovered from the victim's apartment was determined to bear the DNA of co-defendant Phillip Kennebrew. Kennebrew's girlfriend testified that, on the morning of the crimes, she had driven Kennebrew to meet Babbage, who was driving a white Chevrolet. Kennebrew's girlfriend also testified that when she saw him later that day he was wearing different clothes than he had been wearing in the morning. During the investigation, a search uncovered live .40 caliber Smith and Wesson rounds and 12-gauge shotgun rounds, as well as a knife, in backpacks belonging to Kennebrew.

Cell phone records revealed that, on the day of the crimes, 15 separate text or voice communications took place between Babbage's cell phone and Hall's cell phone. Six of these communications, which occurred during a 36-minute period around the time of the crimes, were transmitted via the cell tower servicing the area of the victim's apartment. The phone records also showed

5

seven communications between Babbage's cell phone and Kennebrew's cell phone from that morning.

*Case No. S14A1286*

1. Though Babbage has not enumerated the general grounds, we nonetheless find that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Babbage was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). The victim's blood was found on Babbage's pants, and Babbage's car was seen at the crime scene at the time of the crimes. Babbage had established motives for the crimes, was familiar with the victim's apartment and the valuables kept there, and was likely to have been able to enter the apartment with the victim's consent. On the afternoon of the crimes, Babbage was seen in possession of items identical to those stolen from the victim's apartment. He was also observed on that same day cutting his hair and burning clothing, strongly indicative of an attempt to elude recognition. There was evidence that Babbage was in the company of, and in frequent cell phone contact with, both Hall and Kennebrew on the day of the crimes, both of whom were linked to the crimes independent of the evidence of their association

6

with Babbage. While there is little evidence regarding precisely "who did what" in the victim's apartment, there is ample evidence to implicate Babbage either as a principal or as a party to the crimes. See OCGA § 16-2-20 (persons "concerned in the commission of a crime," by way of intentionally aiding and abetting or intentionally advising, encouraging, or counseling another to commit such crime, may be charged with and convicted of commission of the crime); see also Hassel v. State, 294 Ga. 834 (1) (755 SE2d 134) (2014) (evidence regarding defendant's presence at crime scene, motive, and conduct before and after crime was sufficient to establish guilt as an accomplice); Rush v. State, 294 Ga. 388, 389 (1) (754 SE2d 63) (2014) ("'[p]resence, companionship, and conduct before and after an offense is committed are circumstances from which participation in the criminal act may be inferred'").

2. Babbage contends that his trial counsel rendered ineffective assistance in two respects. To establish ineffective assistance of counsel, a defendant must show that his trial counsel's performance was professionally deficient and that but for such deficient performance there is a reasonable probability that the result of the trial would have been different. Strickland v. Washington, 466 U. S. 668, 695 (104 SCt 2052, 80 LE2d 674) (1984); Wesley v. State, 286 Ga. 355

7

(3) (689 SE2d 280) (2010).  To prove deficient performance, one must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms."  Romer v. State, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013).  Courts reviewing ineffectiveness claims must apply a strong presumption that counsel's conduct fell within the wide range of reasonable professional performance.  Id.  Thus, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.  Id.  If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the Strickland test, this Court is not required to examine the other.  See Green v. State, 291 Ga. 579 (2) (731 SE2d 359) (2012).

(a)  Babbage first claims his counsel was ineffective for failing to object to the trial court's jury instruction on parties to a crime, insofar as the indictment did not specifically charge Babbage as a party.  However, it is well-settled that the indictment need not specifically charge a defendant as a party to the crime in order to permit a jury instruction on accomplice liability and authorize a conviction based thereon.  Jennings v. State, 288 Ga. 120 (2) (702 SE2d 151)

8

(2010). As counsel cannot be deemed ineffective for failing to make a meritless objection, see Williams v. State, 289 Ga. 672 (2) (715 SE2d 76) (2011), this enumeration is without merit.

(b) Babbage also contends his trial counsel was ineffective for failing to object to the imposition of a life sentence without the possibility of parole given the absence of any jury determination that such punishment was appropriate. Babbage claims that Georgia law permitting trial judges to impose such a sentence without a jury's input, OCGA § 16-5-1 (e) (1); Williams v. State, 291 Ga. 19 (1) (727 SE2d 95) (2012), is at odds with United States Supreme Court precedent delineating the jury's constitutionally mandated role in the imposition of enhanced punishment. Apprendi v. New Jersey, 530 U. S. 466 (IV) (120 SCt 2348, 147 LE2d 435) (2000) (holding that any fact, other than that of a prior conviction, that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proven beyond a reasonable doubt). Babbage asserts that trial counsel performed deficiently in failing to make this argument at sentencing.

We disagree. As we noted in Williams, supra, the Georgia General Assembly in 2009 amended our murder statute, OCGA § 16-5-1, to add life

9

imprisonment without the possibility of parole as an authorized punishment for murder without regard to whether the State seeks the death penalty. Williams, 291 Ga. at 20.[2] Thus, life without parole is now within the range of statutorily authorized punishments in all but a discrete, narrowly defined subset of murder cases. OCGA § 16-5-1 (e) (1), (2).[3] Because life without parole falls within the statutory range, Apprendi simply does not apply to this sentencing scheme. See Apprendi, 530 U. S. at 490 (Sixth and Fourteenth Amendments require jury determination as to facts that "increase[ ] the penalty for a crime beyond the prescribed statutory maximum" or "increase the prescribed range of penalties to which a criminal defendant is exposed"). Consequently, trial counsel's failure to make the novel — and, ultimately, unsuccessful — argument that Babbage now propounds cannot provide the basis for an ineffectiveness claim. See Rickman v. State, 277 Ga. 277 (2) (587 SE2d 596) (2003) (noting that trial counsel are under no general duty to anticipate changes in the law and thus only

_____

[2] As originally enacted, the life without parole provision appeared at subsection (d) of OCGA § 16-5-1, see Ga. L. 2009, p. 223, § 1; however, that Code section has since been amended such that the life without parole provision now appears at subsection (e). See Ga. L. 2014, p. 445, § 1-1.

[3] Specifically, life without parole is not available for felony murder premised on second degree child cruelty, as defined in OCGA § 16-5-1 (d).

rarely could a successful ineffectiveness claim be premised on the failure to make an objection that would have lacked merit under existing law).

*Case No. S14A1287*

3. Appellant Hall, unlike Babbage, does challenge the sufficiency of the evidence in support of his convictions. However, we find that the evidence was more than sufficient to sustain Hall's convictions. <u>Jackson</u>, 443 U. S. at 316. Hall was identified by witness Marvin Evans as the man he saw coming upstairs from the victim's apartment just before Evans' discovery of the crimes; his fingerprints were found on the car used in the crimes; a search of the home where Hall lived uncovered various firearms matching the descriptions of those stolen from the victim's apartment; Hall was seen on the afternoon of the crimes with electronic equipment just like that which was stolen; Hall cut off his hair, shaved his beard, and burned his clothing on the afternoon of the crimes; Hall was an associate of Babbage, who was implicated in the crimes by evidence independent of his association with Hall; Hall's cell phone was shown to have transmitted several communications with Babbage's cell phone through a cell tower in close proximity to the victim's apartment around the time of the crimes; and Hall's own statements to his girlfriend, both via text message and in person,

11

corroborated his participation in the murder and robbery. Though Hall asserts that all the evidence implicating him was circumstantial, see former OCGA § 24-4-6,[4] the sheer weight of this evidence effectively defeats the plausibility of any hypothesis other than that of Hall's guilt. See Owens v. State, 286 Ga. 821 (1) (693 SE2d 490) (2010).

4. Hall next contends that the trial court erred in allowing Erin Tew to testify that Hall was previously incarcerated. During cross-examination, Hall's counsel pressed Tew on how long she had known Hall, to which Tew responded that she had been dating Hall for two-and-a-half years and had known him slightly longer than that, remarking that "he's only been out of prison for three years." Given that no objection was made at the time Tew gave this testimony, Hall has failed to preserve this issue for appellate review. See, e.g., Jones v. State, 292 Ga. 593 (6) (740 SE2d 147) (2013).

5. Hall also contends his trial counsel rendered ineffective assistance of counsel in several respects.

(a) First, Hall makes the general claim that trial counsel failed to

_____

[4] For trials occurring on and after January 1, 2013, this provision is now codified at OCGA § 24-14-6.

adequately investigate the case, consult with Hall, or prepare for trial. However, the trial court was authorized to credit counsel's testimony at the new trial hearing that he met with Hall several times prior to and during trial, shared with Hall the State's discovery materials and explained to Hall his proposed trial strategy, and, in coordination with his private investigator, interviewed witnesses, visited the crime scene, and otherwise investigated the case. Moreover, insofar as Hall has failed to proffer any specific evidence that trial counsel would have uncovered or alternative strategies counsel would have pursued had he investigated more thoroughly, Hall cannot establish prejudice in this regard.

(b) Hall next contends that trial counsel rendered ineffective assistance by failing to object during opening statements when the prosecutor referred to the victim as a "nice kid." Given that the jury was instructed that opening statements are not evidence and that this isolated comment was contradicted by actual evidence that the victim was a drug dealer and accused child molester, we find no deficient performance in counsel's failure to object. Moreover, given the strength of the evidence against Hall, we find no reasonable probability that the result of Hall's trial would have been different had counsel responded to the

remark differently.

(c) Hall also contends that trial counsel performed in an objectively unreasonable manner in deliberately characterizing Hall as a drug dealer. Trial counsel testified at the new trial hearing that his strategy was to present to the jury a credible alternative explanation for what Hall was doing at the time of the murder and also to preempt or blunt the effect of the evidence of drugs and drug paraphernalia found in the search of Hall's home. Because the phone records showed that Hall was in the vicinity of the crime scene around the time of the crimes, counsel chose to argue that Hall was simply at his home — which was in close proximity to the crime scene — doing what he normally did. Though this strategy was ultimately unsuccessful, we do not find that it was patently unreasonable given the nature of the State's evidence against Hall and the apparent absence of any alternative strategies.

(d) Hall's final contention is that counsel rendered ineffective assistance in failing to object or request a mistrial when Tew made reference to Hall's prior incarceration. See Division 4, supra. However, it is well established that a witness' passing reference to a defendant's past criminal record — particularly when it is not responsive to the question posed — does not improperly place his

14

character in issue. See Lanier v. State, 288 Ga. 109, 110 (2) (702 SE2d 141) (2010) ("a nonresponsive answer that impacts negatively on a defendant's character does not improperly place (his) character in issue" (punctuation omitted)); Isaac v. State, 269 Ga. 875, 877-878 (5) (505 SE2d 480) (1998) ("'passing reference'" to defendant's criminal history did not create reversible error). Counsel's decision not to draw attention to this remark by making an objection neither constitutes deficient performance nor, given the weight of the evidence against Hall, resulted in any prejudice.

Judgments affirmed. All the Justices concur.

Decided January 20, 2015.

Murder. DeKalb Superior Court. Before Judge Flake.

Ghanayem & Rayasham, Musa M. Ghanayem, Mark J. Issa, Jonathon J. Majeske, for appellant (case no. A14A1286).

Anthony S. Carter, for appellant (case no. A14A1287).

Robert D. James, Jr., District Attorney, Gary D. Bergman, Charles C. Olson, Charles A. Spahos, Joseph F. Burford, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K, Smith,

Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General, for appellee.