300 Ga. 426
FINAL COPY

S16A1426. MORRISON v. THE STATE.

BLACKWELL, Justice.

Kiro Dewayne Morrison was tried by a Fulton County jury, and he was convicted of the murder of Vonyell Byrd, as well as unlawful possession of a firearm during the commission of a felony. Morrison appeals, contending that the evidence is legally insufficient to sustain his convictions and that he was denied the effective assistance of counsel. Upon our review of the record and briefs, we see no error, and we affirm.[1]

1. Viewed in the light most favorable to the verdict, the evidence shows that Morrison and Byrd were involved romantically and lived together in an

---

[1] Byrd was killed on July 10, 2008. On August 27, 2010, a grand jury indicted Morrison and charged him with malice murder, felony murder, aggravated assault, and unlawful possession of a firearm during the commission of a felony. Morrison's trial began on April 8, 2013, and the jury returned its verdict on April 11, finding Morrison guilty on all counts. On the day the verdict was announced, Morrison was sentenced to imprisonment for life for malice murder and a consecutive term of imprisonment for five years for unlawful possession of a firearm during the commission of a felony. The felony murder was vacated by operation of law, and the aggravated assault merged with the malice murder. See Malcolm v. State, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). Morrison timely filed a motion for new trial on May 2, 2013, and he amended it on March 2, 2015. The trial court denied his motion on June 17, 2015, and Morrison timely filed a notice of appeal on July 14, 2015. His appeal was docketed in this Court for the September 2016 term and submitted for decision on the briefs.

apartment in southwest Atlanta. In the early morning hours of July 10, 2008, they went to a nightclub, where they argued. Their argument escalated to a physical struggle, security personnel intervened, and Morrison was escorted out of the nightclub. Byrd told security personnel — who described Byrd as "upset" and "emotional" — that she did not want to go home with Morrison. If she did, she explained, the fighting would "start all over again." Byrd nevertheless returned to their apartment at some point on the morning of July 10, and around 4:30 a.m., a neighbor called 911 to report a shooting. When law enforcement officers arrived, they found Byrd's body on the bed. She had been shot in the back of her head with a shotgun at close range.

Morrison gave a statement to officers in which he claimed that he informed Byrd at the club that he was ending their relationship, and he said that Byrd became angry. He claimed that Byrd was awaiting him with a shotgun when he returned to their apartment, that she repeatedly pulled the trigger (apparently unaware that the safety was engaged), that he attempted to gain control of the shotgun, and that the gun accidentally discharged while it was "solely in her hand."

Morrison now claims that no rational jury could have found beyond a reasonable doubt that the killing of Byrd was murder, not an accident. But "questions as to the reasonableness of hypotheses other than the guilt of the defendant are generally for the jury to decide." Lowe v. State, 295 Ga. 623, 625 (1) (759 SE2d 841) (2014). Here, especially considering that Morrison's own self-serving statement was the only evidence that Byrd's death was accidental, and considering as well that his hypothesis of accidental death was not consistent with the forensic evidence,[2] we conclude that the evidence authorized the jury to find beyond a reasonable doubt that Morrison was guilty of murder and unlawful possession of a firearm during the commission of a felony. See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Morrison claims that he was denied the effective assistance of counsel because his lawyer failed to pursue an alternative defense of justification and because the lawyer failed to object when the State offered hearsay evidence. To prevail on a claim of ineffective assistance, Morrison must prove both that the

_____

[2] Among other things, the autopsy and crime scene evidence showed that Byrd was shot in the back of her head and from the left side. That evidence contradicted Morrison's claim that the barrel was pointing upward and toward Byrd's face when the gun fired accidentally.

performance of his lawyer was deficient and that he was prejudiced by this deficient performance. Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Morrison must show that the lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also Kimmelman v. Morrison, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Morrison must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U. S. at 694 (III) (B). See also Williams v. Taylor, 529 U. S. 362, 391 (III) (120 SCt 1495, 146 LE2d 389) (2000). This burden is a heavy one, see Kimmelman, 477 U. S. at 382 (II) (C), and we conclude that Morrison has failed to carry it.

First, Morrison asserts that his trial lawyer should have pursued a defense of justification as an alternative to accident. See Turner v. State, 262 Ga. 359, 360 (2) (b) (418 SE2d 52) (1992) ("the facts of a case will, at times, present a

4

situation where a party who is armed with a weapon contends that while he was defending himself from another party, his weapon accidentally discharged and killed that other party") (footnote omitted). But in his statement to investigating officers, Morrison never said that he accidentally shot Byrd while he was in the process of defending himself. Instead, he claimed that he did not shoot Byrd at all (whether accidentally or intentionally), and he asserted that she accidentally shot herself while he was trying to get the gun away from her (but while the gun remained "solely in her hand"). Morrison's lawyer made a strategic decision to argue to the jury that the statement was truthful and that Morrison did not shoot Byrd in self-defense or otherwise. Morrison's statement to the police did not support a justification defense, and the decision to instead pursue only an accident defense does not establish deficient performance. See Stinchcomb v. State, 280 Ga. 170, 174 (5) (626 SE2d 88) (2006) (trial counsel's performance was not deficient for failing to pursue a defense that "was not adjusted to the evidence of the case").

Second, Morrison claims that his lawyer performed deficiently when he failed to object to the testimony of a nightclub security guard, who testified that Byrd said that she did not want to go back to the home that she shared with

5

Morrison. To begin, Morrison has failed to show that a hearsay objection ultimately would have been sustained, especially considering that the State — if an objection had been made — might well have been able to lay a foundation to establish that the statement nevertheless was admissible under an exception to the hearsay rule. See, e.g., OCGA § 24-8-803 (1) (present-sense impression of declarant) and (3) (existing mental, emotional, or physical condition of declarant). At the hearing on his motion for new trial, Morrison did not recall the guard as a witness to show that the State would have been unable at trial to lay a foundation for a hearsay exception. More important, Morrison's lawyer explained at the hearing that he chose not to object to the testimony at issue because he thought it supported Morrison's defense. The testimony showed that Byrd was angry and emotional at the nightclub, and in that respect, it corroborated Morrison's statement that he had broken up with Byrd at the nightclub. It also suggested that she was likely to arm herself in preparation for an altercation with Morrison upon her return to their apartment. Given that Morrison's defense required the jury to believe that it was Byrd and not Morrison who had the gun inside the bedroom, it cannot be said that no

6

reasonable lawyer would have chosen to forgo an objection to this testimony. See State v. Mobley, 296 Ga. 876, 877 (770 SE2d 1) (2015).[3]

Judgment affirmed. All the Justices concur.

Decided January 23, 2017.

Murder. Fulton Superior Court. Before Judge McBurney.

Genevieve Holmes, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Sheila E. Gallow, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Meyerhoefer, Assistant Attorney General, for appellee.

---

[3] Morrison also contends that he was prejudiced by the cumulative effect of his trial lawyer's deficient performance. But because Morrison has not established that his lawyer's performance was deficient at all, this claim is without merit. See Smith v. State, 288 Ga. 348, 354 (8) (j) (703 SE2d 629) (2010).