306 Ga. 594
FINAL COPY

S19A0880.  DAVIS v. THE STATE.

BETHEL, Justice.

Following his conviction for the murder of Hassan Williams, as well as his convictions for armed robbery, aggravated assault, hijacking a motor vehicle, arson in the first degree, and cruelty to children in the first degree, Alvin Davis III appeals from the denial of his motion for new trial.[1]  Davis argues that the trial court erred

---

[1] Hassan Williams was killed on July 17, 2012. On February 7, 2013, a Thomas County grand jury jointly indicted Davis, Chaquel Cook, Kimberly Williams, and Kiera Graham for malice murder, felony murder predicated on armed robbery and aggravated assault, armed robbery, aggravated assault, hijacking a motor vehicle, arson in the first degree, and cruelty to children in the first degree for committing the offenses of murder, armed robbery, aggravated assault, and arson in the presence of a child. Cook was also charged with possession of a firearm by a convicted felon. After a September 2013 trial at which Davis was tried alone, a jury found Davis guilty of all counts. Davis was sentenced to serve life in prison without the possibility of parole for malice murder, life in prison for armed robbery (consecutive), twenty years for aggravated assault (consecutive), twenty years for hijacking a motor vehicle (consecutive), twenty years for first degree arson (consecutive), and twenty years for first degree cruelty to children (consecutive). The trial court purported to merge the felony murder count into the malice murder count, but the felony murder count was actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369 (5) (434 SE2d 479) (1993).  Davis filed a motion for new trial on September 30, 2013, and an amended motion on October 29, 2018.

in denying his motion for a new trial because the evidence was insufficient to convict him on all charges and because he received ineffective assistance of counsel at trial. However, because we determine that the evidence was sufficient to authorize a rational jury to find Davis guilty of the crimes for which he was convicted, and that Davis was not denied the effective assistance of counsel, we affirm.

Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. In the early morning of July 17, 2012, Davis was at the apartment of his girlfriend Kiera Graham and her roommate Kimberly Williams ("Kimberly"). Graham's five-year-old daughter was also present. Hassan Williams[2] ("Williams"), who had served in the U. S. Army with Graham, showed up outside the apartment after having texted Graham the day before to say that he was coming to town. The two had been texting earlier in the

Following a hearing, the trial court denied the motion (as amended) on December 20, 2018. Davis filed a notice of appeal to this Court on December 31, 2018, and the case was docketed in this Court for the April 2019 term and submitted for a decision on the briefs.

[2] No relation to Kimberly Williams.

week and planned to meet up to have sex. When Williams arrived that morning, however, Graham was in the apartment but did not want to go out to the parking lot to greet him. Instead, Kimberly went outside and told Williams that Graham had already left for work.

When Kimberly returned to the apartment, Graham asked Kimberly to take Graham's young daughter with her when Kimberly went to take Davis home. Kimberly walked out to the car accompanied by Davis and Graham's daughter. Williams, who had remained in the parking lot of the apartment complex, called out to Kimberly and asked her where Graham was and said he would follow Kimberly. Kimberly replied that he ought to meet Graham at a local store instead, but Williams insisted on following her. As the two cars drove away, Davis called his brother, Chaquel Cook, and said that they were going "to make a lick"[3] and to meet him at "the spot where we normally go." After hearing this, Kimberly tried to

---

[3] Later testimony clarified that "making" or "catching" a "lick" is slang for setting up a robbery.

lose Williams, who was following her in his vehicle, in the hopes that Graham would call him to come back to the apartment. When her attempt to lose Williams failed, Kimberly decided to stop at a gas station. While stopped at the gas station, Kimberly texted Graham that Davis' comments made her concerned that he was planning to kill Williams. Kimberly therefore asked Graham to call Davis. Kimberly ended up calling Graham, who then agreed to speak to Davis. Davis assured Graham that he would not hurt or kill anyone. After the call, Kimberly returned to the car with Davis, who directed her to what she believed was his house. As Davis instructed, Kimberly pulled into the driveway of the house and stopped. Williams pulled in behind her. Graham's child then called out that she saw "a man in a mask" outside of the car and that she wanted to go home to her mom. Davis got out of the car, and Kimberly drove away.

Kimberly then received a call from Graham, who frantically asked her to return home. When Kimberly got back to the apartment, Graham was outside on her phone. Graham told

4

Kimberly to move to the passenger seat. Kimberly then saw that Graham was holding a jug of bleach and asked her what was going on, but Graham would not say. Instead, Graham replied that "the less [Kimberly] knew, the better [she] was," and that Graham had to leave to meet Davis.

Graham drove the car to a different location than the house at which Kimberly had left Davis. When they pulled up, Kimberly saw Cook come out from behind Williams' car, which had been moved to the new location, with a ski mask pulled up on top of his head. Graham instructed her daughter to get down on the floor of the car. Davis came and retrieved the bleach from Graham, and Cook poured the bleach in Williams' car and lit the car on fire. Kimberly asked if Williams had been hurt, but Davis denied it. Davis and Cook then got in Graham's car. When they left, Williams' vehicle was burning.

Later that day, Graham confided in Kimberly that Davis had told her that Cook "made a mistake" and shot Williams in the back,

and that Davis then shot him in the head to stop his suffering.[4] Graham told Kimberly that Davis and Cook "were going to hurt [Kimberly] if she told anyone about what she saw." Graham also said she promised Davis and Cook that she would "keep [Kimberly] quiet."

After discovering Williams' body outside the house and his burning vehicle at a separate location, police were able to connect Davis and the others to the murder. At trial, Jessica Ivey, Davis' former fiancée, testified that Davis told her that he and his brother had both shot Williams, and that Davis had shot him because he was concerned that the victim would be paralyzed or would die after Cook's initial shot. Kanetria Flemming, the mother of one of Davis' children, also testified that Davis texted her and confessed to shooting Williams twice in the back of the head and burning his car after the botched robbery. Flemming further testified that Davis changed his text signature to "red rum," which spells murder

---

[4] Testimony reflected that Williams had an entrance gunshot wound in the back left side of his head and a second entrance gunshot wound in the left upper side of his back.

backwards.

Texts between Davis and Cook later revealed that, on the morning of July 17, shortly after Williams was killed, the two conspired to fabricate an alibi. Police also recovered Williams' GPS device from a location identified by Davis during a police interview. Shoe impressions consistent with shoes owned by Davis were also found at the crime scene. Davis was questioned by police several times, and while he initially denied any involvement, he later admitted that he was afraid of Williams and had therefore called Cook, who told him where to lead Williams. Davis further claimed that Cook shot Williams and that Cook made him help move Williams' car to where it was ultimately set on fire.

1. Davis argues that the State did not present sufficient evidence to support a verdict of guilty for each charge of which he was convicted. We disagree.

Davis was charged individually and as a party to the crime of

7

malice murder,[5] armed robbery,[6] first-degree arson,[7] hijacking a motor vehicle,[8] and first-degree cruelty to children.[9]

Here, the evidence presented at trial showed that Davis planned to rob Williams but the robbery went badly. Davis admitted to several witnesses that he shot Williams. Davis also participated in taking Williams' car to where it was burned, and he attempted to cover up his involvement in the crime by fabricating an alibi. Physical evidence linked Davis to the scene of the crime, and Davis later admitted to police that he was present during the commission of the crimes, though he denied any involvement. Davis further admitted to police to hiding certain items at a friend's house, and police later recovered Williams' GPS at this location. Viewing the evidence in a light most favorable to the verdicts and deferring to the jury's assessment of the weight and credibility of the evidence, we find the evidence sufficient to authorize a rational trier of fact to

---

[5] See OCGA § 16-5-1.
[6] See OCGA § 16-8-41.
[7] See OCGA § 16-7-60.
[8] See OCGA § 16-5-44.1 (b).
[9] See OCGA § 16-5-70 (b).

find Davis guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). See also *Allen v. State*, 275 Ga. 64, 66 (1) (561 SE2d 397) (2002) ("It is the jury's role to resolve conflicts in the evidence and determine the credibility of witnesses." (citation and punctuation omitted)).

In particular, as it pertains to the hijacking charge, OCGA § 16-5-44.1 (b) (1) provides:

> A person commits the offense of hijacking a motor vehicle in the first degree when such person while in possession of a firearm or weapon obtains a motor vehicle from an individual or the presence of another individual by force and violence or intimidation or attempts or conspires to do so.

Here, the evidence shows that Davis and Cook lured Williams to an isolated location with the intention of taking items of value from him (which could have included his vehicle) and that they used one or more firearms to confront Williams immediately adjacent to the vehicle. At the conclusion of that confrontation, Davis and Cook took possession of Williams' vehicle. The jury was authorized to conclude

9

from this evidence that Davis was guilty beyond a reasonable doubt of the offense of hijacking a motor vehicle. See *DeVaughn v. State*, 296 Ga. 475, 476 (1) (769 SE2d 70) (2015).

2. Davis next argues that he received ineffective assistance because his trial counsel failed to object to the prosecution's improper closing argument and to certain hearsay testimony. We disagree.

> In order to succeed on his claim of ineffective assistance, [Davis] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC[t] 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); *Fuller v. State*, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

(Punctuation omitted.) *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

(a) Davis first argues that his trial counsel should have

10

objected to statements made by the prosecution during closing that referenced the victim's "good character."  Specifically, Davis argues the following was objectionable:

> [Williams] wasn't from here, never been here.  He's from Columbia, South Carolina.  Had scholarships, could have played football, graduated with honors.  He was a Fox 57 Teen Watch in January 2009 before he graduated.  I mean, he was a big man on campus from where he was from, a good guy.  He didn't deserve this.  Nobody deserves this.  I mean, can you imagine being so selfless as to give up a football scholarship to go play college football because you've got a daughter on the way and you're going to go in the Army so you can support her?  You know, he wanted to support his daughter, unlike some of the people you've heard in this courtroom today, or this week.

Pretermitting whether counsel's failure to object to these statements in the State's closing argument constituted deficient performance, Davis has not demonstrated that he was prejudiced.  "The burden of showing a reasonable probability that the outcome would have been different but for counsel's deficient performance, though not impossible to carry, is a heavy one."  (Citation and punctuation omitted.) *Revere v. State*, 302 Ga. 44, 49 (2) (a) (805 SE2d 69) (2017).  Here, the evidence introduced at trial shows that

11

Davis planned to rob Williams, that he admitted to several other witnesses that he shot Williams and burned his car, and that physical evidence and his own admission to police linked him to the scene of the crimes. Considering the totality of the evidence, we find no reasonable probability that, had trial counsel objected to the statements in closing regarding Williams' good character, the outcome in Davis' case would have been different. See *Strickland*, 466 U. S. at 695 ("In making [the prejudice] determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."); *Babbage v. State*, 296 Ga. 364, 370 (5) (b) (768 SE2d 461) (2015) (no prejudice where trial counsel failed to object to prosecutor's reference to victim as a "nice kid" during opening statements given strength of evidence against defendant).

(b) Davis next argues that trial counsel should have objected to Kimberly's testimony that Graham's daughter pointed out a "man in a mask" to her and then asked to go home, as the statements were hearsay. We disagree with Davis that counsel's decision not to

object constitutes deficient performance.

Davis' ineffectiveness claim fails because such an objection would have been meritless. The State could have laid a foundation to establish that the statements nevertheless were admissible through exceptions to the hearsay rule — that is, as either a present sense impression or an excited utterance. See OCGA § 24-8-803 (1), (2).[10] See, e.g., *McCord v. State*, 305 Ga. 318, 324 (2) (a) (ii) (825 SE2d 122) (2019) (statement made while declarant was still under stress or excitement of the startling event admissible as an excited utterance); *Morrison v. State*, 300 Ga. 426, 428 (2) (796 SE2d 293) (2017) (no deficiency where, had an objection been made, the State could have laid a foundation to establish that the statement at issue was admissible as a present sense impression). As the "[f]ailure to make a meritless objection cannot be evidence of ineffective

---

[10] OCGA § 24-8-803 (1) provides that a present sense impression is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter[.]" OCGA § 24-8-803 (2) provides that an excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition[.]"

assistance," this enumeration is without merit. See *Hayes v. State*, 262 Ga. 881, 884-885 (3) (c) (426 SE2d 886) (1993).

*Judgment affirmed. All the Justices concur.*

DECIDED AUGUST 19, 2019.

Murder. Thomas Superior Court. Before Judge Hardy.

*Conger & Smith, Gregory D. Smith*, for appellant.

*Bradfield M. Shealy, District Attorney, James L. Prine II, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General*, for appellee.