307 Ga. 24
FINAL COPY

S19A0820.  BROWN v. THE STATE.

BENHAM, Justice.

Appellant LaQuan Brown appeals her convictions for the murder of Ivory Carter, the armed robbery and aggravated assault of George Jackson, and the attempted murder and attempted armed robbery of Frederick Knight.[1]  Appellant contends that the evidence

---

[1] The crimes occurred between July 30 and August 4, 2014.  In October 2014, a Chatham County grand jury returned a thirty-two count indictment charging Brown and two co-indictees (who were not part of the trial below) with offenses related to the crimes committed against Carter, Jackson, and Knight.  The thirty counts relevant to Brown are as follows: malice murder; four counts of felony murder (predicated on hijacking, armed robbery, aggravated assault, and possession of a firearm by a first offender, respectively); three counts of hijacking a motor vehicle (Carter, Jackson, and Knight); five counts of aggravated assault (Carter (two counts), Jackson (two counts), and Knight); two counts of armed robbery (Carter and Jackson); two counts of criminal attempt to commit a felony (the attempted murder and attempted armed robbery of Knight); and thirteen counts of possession of a firearm during the commission of a felony (one count for the use of a firearm in each of the charged offenses).  At a trial conducted from February 16 through 23, 2016, a jury returned guilty verdicts on all charges except one count of felony murder (predicated on possession of a firearm by a first offender), hijacking a motor vehicle (Knight), and possession of a firearm during the commission of a felony (hijacking of Knight).  In March 2016, the trial court sentenced Brown to serve: life in prison without the possibility of parole for malice murder; a consecutive five-year term in prison for possession of a

was insufficient to sustain her convictions, that the trial court erroneously ruled on a number of evidentiary matters, that the rule of lenity should be applied to her sentences, and that trial counsel was ineffective in eight different ways. Finding no reversible error, we affirm.

Reviewing the facts in a light most favorable to the verdicts, the evidence adduced at trial established as follows. On July 27, 2014, Appellant contacted Prince Owens for a ride, asking to be picked up near an apartment complex. Owens arrived at the

---

firearm during the commission of a felony (murder); a consecutive twenty-year term in prison for hijacking a motor vehicle (Carter); a concurrent twenty-year term in prison for armed robbery (Carter); a consecutive twenty-year term in prison for hijacking a motor vehicle (Jackson); a consecutive five-year term in prison for possession of a firearm during the commission of a felony (hijacking Jackson); a concurrent twenty-year term in prison for armed robbery (Jackson); a consecutive thirty-year term in prison for criminal attempt to commit a felony (the attempted murder of Knight); a consecutive five-year term in prison for the possession of a firearm during the commission of a felony (attempted murder of Knight); and a concurrent twenty-year term in prison for criminal attempt to commit a felony (attempted robbery of Knight), for a total sentence of life imprisonment without the possibility of parole plus eighty-five years. All other verdicts were deemed vacated by operation of law or merged by the trial court, and the State does not raise any merger issue.

On March 23, 2016, Appellant filed a timely motion for new trial, which was amended in September 2016. Following a hearing in November 2016, the trial court denied the motion (as amended) on March 26, 2018. Appellant filed a timely notice of appeal to this Court; this case was docketed to the April 2019 term of this Court and thereafter submitted for a decision on the briefs.

2

location and waited for Appellant, but she never appeared and never answered his telephone calls. When Owens returned to his home, he discovered that it had been burglarized.

On July 30, the same telephone number that Appellant had used to contact Owens was used to contact Ivory Carter, a sales manager at a local car lot who drove a dealership-owned Nissan Murano. Numerous telephone calls occurred between Appellant and Carter that day, including one just minutes before a witness observed three individuals surround an SUV and then heard a number of "pops." That witness then observed a man, later identified as Carter, run toward him for help; Carter, who had been shot, collapsed in front of the witness and subsequently died of his injuries. Days later, Appellant and one of her co-indictees, Rashard Mosley, went to stay with Appellant's cousin, Mary Singleton. The pair arrived at Singleton's residence driving a Nissan Murano, and Appellant later confided in Singleton about Carter's shooting. Singleton ultimately learned that the murder occurred because a planned robbery had gone awry.

3

On August 3, Appellant used Singleton's telephone number to contact George Jackson, who was driving in the area of Singleton's residence. According to Jackson, he heard someone call out his name and then saw people on bicycles steer in front of his vehicle; when he stopped, two individuals jumped into his SUV. One of the individuals, a woman, brandished a weapon and demanded that Jackson turn over his keys. Following a struggle for the firearm, Jackson escaped on foot; his cellular telephone and car keys were taken from the vehicle. Jackson would later point out Appellant in a photo array, indicating that she "favored" the woman from the incident.

The next day, Appellant used Singleton's telephone to arrange a meeting with Frederick Knight, who was acquainted with Appellant from a previous romantic encounter. Knight drove to a location near Singleton's residence, and Appellant met him on the street, positioning herself halfway into the vehicle. As the pair were talking, Mosley walked up to Knight and pointed a gun at him, telling Knight not to do anything. In response, Knight pressed the

4

accelerator; Appellant jumped out of the truck, and Mosley fired numerous shots at Knight's fleeing vehicle. Singleton would testify at trial that, after this incident, she overheard Appellant and Mosley remark that they "didn't get anything" from the incident.

After Knight reported the shooting to police, Appellant and Mosley were arrested at Singleton's residence. A Nissan Murano with a shattered windshield was recovered in an adjacent lot, and a subsequent search of Singleton's residence yielded the firearm used against Knight, as well as vehicle keys for both the Murano and Jackson's vehicle. The jury learned that Appellant's DNA was found on the key to the Murano; that Appellant had sent inculpatory letters from jail acknowledging her involvement in the crimes and comparing herself and Mosley to "Bonnie and Clyde"; and that Appellant ultimately gave a statement to police admitting her involvement in Carter's murder, which, she explained, resulted from a botched robbery.

1. Appellant first contends that the State failed to adequately prove Count 25 — criminal attempt to commit a felony (attempted

armed robbery of Knight) — as that crime was alleged in the indictment and, thus, that there was a fatal variance between the indictment and the proof at trial. This claim has no merit.

Criminal attempt is accomplished "when, with intent to commit a specific crime, [a person] performs any act which constitutes a substantial step toward the commission of that crime." OCGA § 16-4-1. Armed robbery, in relevant part, is accomplished "when, with intent to commit theft, [a person] takes property of another from the person or the immediate presence of another by use of an offensive weapon[.]" OCGA § 16-8-41 (a). Here, Count 25 charged that Appellant and Mosley "individually and as parties concerned in the commission of a crime . . . knowingly and intentionally attempted to commit the crime of Armed Robbery . . . in that the said accused pointed a gun at Mr. Knight and demanded his property, acts which constitute a substantial step toward the commission of said crime."

Appellant argues that the evidence at trial unequivocally established that, though a gun was pointed at Knight, there was

never a demand for property, and, thus, that the State failed to prove "an essential element of the crime it alleged." Appellant's argument, though, hinges on Knight's testimony that there was no *verbal* demand for property. As the jury was instructed, however, the facts of the case could be established by both direct and *circumstantial* evidence.

The evidence, as presented to the jury, showed that Appellant arranged a meeting with Knight; that, when Knight arrived at the rendezvous point, Appellant strategically arranged herself halfway in his vehicle (preventing him from moving the vehicle); that she distracted Knight while Mosley approached the vehicle with a firearm; that, while holding Knight at gunpoint, Mosley instructed Knight not to do anything; and that, after the incident, Appellant and Mosley lamented that the robbery was unsuccessful. Knight testified that he perceived that he was being robbed, and the evidence permitted the jury to similarly conclude that, though there was no verbal request for property, the actions of and circumstances created by Appellant and Mosley amounted to a demand for Knight's

7

property. See, e.g., *Worthen v. State*, 304 Ga. 862, 868 (823 SE2d 291) (2019) ("Jurors are normally entitled to make reasonable inferences from circumstantial evidence regarding all sorts of facts, including the facts necessary to find defendants guilty beyond a reasonable doubt of capital crimes.").

Moreover, even if there were a deviation between the allegations in the indictment and the evidence adduced at trial, there was no fatal variance.

> Our courts no longer employ an overly technical application of the fatal variance rule, focusing instead on materiality. The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused. It is the underlying reasons for the rule which must be served: 1) the allegations must definitely inform the accused as to the charges against him so as to enable him to present his defense and not to be taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the same offense. Only if the allegations fail to meet these tests is the variance fatal.

*Delacruz v. State*, 280 Ga. 392, 396 (627 SE2d 579) (2006).

Appellant was not subjected to either of these dangers. Count 25, which tracks the language of the relevant statutes, sufficiently

informed Appellant of the nature and substance of the criminal attempt charge, and Appellant "has not shown that [s]he was unable to present a viable defense to such charges or that [s]he was surprised or misled at trial by" the State's failure to present evidence of a verbal demand for property. *Roscoe v. State*, 288 Ga. 775, 776-777 (707 SE2d 90) (2011). Moreover, "there is no danger that [s]he could be prosecuted again for the same offense," as the indictment in this case specifically describes the incident for which Appellant was charged and ultimately convicted. *Cooper v. State*, 286 Ga. 66, 68 (685 SE2d 285) (2009). There was no fatal variance. See *Roscoe*, 288 Ga. at 776 (no fatal variance where proof of prior felony offense presented at trial differed from that alleged in the indictment); *Cooper*, 286 Ga. at 68 (no fatal variance where the evidence of cause of death presented at trial differed from the cause of death alleged in the indictment); *Murray v. State*, 328 Ga. App. 192, 193 (761 SE2d 590) (2014) (no fatal variance where indictment alleged burglary victim owned dwelling but evidence at trial established that the victim did not finalize the purchase of the residence until after the

date of the burglary). See also *Lebis v. State*, 302 Ga. 750, 759-760 (808 SE2d 724) (2017). Irrespective of whether there was an explicit demand for property, significant evidence established that Appellant, both individually and as a party to the crime, took substantial steps toward the commission of an armed robbery against Knight as alleged in the indictment.

Finally, we conclude that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Appellant was guilty of the crimes of which she was convicted. See *Jackson v. Virginia,* 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. As mentioned above, Prince Owens testified at trial concerning his encounter with Appellant and his subsequent discovery that his residence had been burglarized. Though Appellant was never charged in connection with that incident, the trial court ruled that Owens' testimony was admissible as intrinsic evidence, concluding that the burglary was "inextricably linked" to the charges in the indictment. Appellant argues on appeal, as she

10

did below, that this evidence was not properly admitted.  There is no error.

While OCGA § 24-4-404 (b) (Rule 404 (b)) generally controls the admission of other acts evidence, also known as "extrinsic evidence,"

> evidence of criminal activity other than the charged offense is *not* "extrinsic" under Rule 404 (b), and thus falls outside the scope of the Rule, when it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense.

(Citations and punctuation omitted; emphasis in original.)  *United States v. Edouard*, 485 F3d 1324, 1344 (11th Cir. 2007).  See also *Smith v. State*, 302 Ga. 717 (4) (808 SE2d 661) (2017).

> [E]vidence pertaining to the chain of events explaining the context, motive, and set-up of the crime is properly admitted if it is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

(Citation and punctuation omitted.) *Williams v. State*, 302 Ga. 474, 485-486 (807 SE2d 350) (2017).  We review the trial court's ruling for abuse of discretion.  See *Fleming v. State*, 306 Ga. 240 (3) (a) (830

11

SE2d 129) (2019).

Here, Appellant was charged with numerous offenses that occurred over the course of approximately a week, all of which involved Appellant contacting men by telephone to set them up to steal from them. This crime spree — indeed, Appellant compared herself to "Bonnie" of the infamous "Bonnie and Clyde" — apparently began with the burglary of Owens' residence and included Carter's murder, which occurred just days later. Appellant used the same telephone number to contact both Owens and Carter; Appellant references this fact, as well as the incident involving Owens, in her numerous jailhouse letters to Mosley. As such, the evidence concerning Owens' encounter with Appellant and the burglary of his home was a link in the chain of events leading up to the murder and completed the story of the crimes for the jury. See *Williams v. State*, 342 Ga. App. 564 (1) (804 SE2d 668) (2017) (evidence of uncharged carjacking admissible as intrinsic evidence where it occurred in the middle of a three-day carjacking spree and where evidence from the uncharged offense helped connect

12

defendant to charged offenses). See also *Johnson v. State*, 348 Ga. App. 831 (1) (823 SE2d 351) (2019); *Baughns v. State*, 335 Ga. App. 600 (1) (782 SE2d 494) (2016). Further, though it implicated Appellant in yet another criminal act, the probative value of evidence concerning the burglary of Owens' residence was not substantially outweighed by the danger of unfair prejudice. As such, the trial court did not abuse its discretion here.

Moreover, even if the trial court's ruling were erroneous, any error was harmless. See *United States v. Sparks*, 440 Fed. Appx. 782, 785 (11th Cir. 2011). The evidence against Appellant — which included eyewitness accounts, DNA evidence, and Appellant's own inculpatory statements — was overwhelming, and there is no reasonable probability that the evidence concerning the uncharged burglary likely contributed to the convictions.

3. During the trial, Appellant was permitted to ask Knight about his status as a convicted felon and to provide the jury with the corresponding sentencing form, which reflected Knight's convictions for child molestation. The trial court did not, however, permit

Appellant to question Knight about the facts underlying the convictions or to provide the jury with the indictment setting out the corresponding allegations; Appellant contends that this was erroneous. However, we need not decide the bounds of what "evidence" is admissible to show "that a witness other than an accused has been convicted of a crime . . . punishable by death or imprisonment in excess of one year," OCGA § 24-6-609 (a) (1), because any possible error here was harmless.

"In the context of Rule 609, error is harmless if the witness' credibility was sufficiently impeached by other evidence, or if the Government's case was strong enough to support a conviction even apart from the witness' testimony." *United States v. Burston*, 159 F3d 1328, 1336 (11th Cir. 1998).[2] Aside from the overwhelming evidence of guilt, Appellant used her available impeachment material to great effect. Even though the factual details of the

---

[2] "Rule 609 of Georgia's new Evidence Code is materially identical to Rule 609 of the Rules of Federal Evidence," *Bashir v. State*, 350 Ga. App. 852 (830 SE2d 353) (2019), and, as such, "we look to federal case law" with respect to the interpretation and application of the rule, *State v. Almanza*, 304 Ga. 553, 556 (820 SE2d 1) (2018).

offenses were not presented during trial, Knight admitted during cross-examination that he was a convicted felon, Knight's sentencing form (reflecting the nature of the offenses, Knight's guilty plea, and Knight's sentences) was provided to the jury, and Appellant's trial counsel used the convictions during closing argument to characterize Knight as a "liar" and a "perjurer" and to repeatedly refer to him as a "child molester," suggesting that his earlier romantic relationship with Appellant may have been improper. Accordingly, Appellant is not entitled to relief on this claim.

4. While cross-examining the lead detective in the Jackson case, Appellant sought to admit into evidence a form showing that the detective had attempted to interview Appellant in October or November 2014[3] but that Appellant had invoked her right to silence. The trial court disallowed the form on relevancy grounds, and Appellant argues on appeal that this ruling was erroneous.

---

[3] The parties appear to agree that the date on the form is inaccurate. The form is dated October 2014, but the transcript reflects that the attempted interview may have actually occurred in November 2014.

"OCGA § 24-4-401 . . . defines relevant evidence broadly as 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *State v. Orr*, 305 Ga. 729, 736 (827 SE2d 892) (2019). "Decisions regarding relevance are committed to the sound discretion of the trial court." *Smith v. State*, 299 Ga. 424, 429 (788 SE2d 433) (2016). Though not entirely clear from the transcript, it appears that trial counsel was aiming to use Appellant's invocation of her right to silence with respect to the Jackson interview to somehow cast doubt on the voluntariness of her earlier statement regarding Carter's murder. Specifically, it appears that trial counsel wanted to use the form to imply that "the police ke[pt] coming out and talking to [Appellant] . . . eventually [. . .] get[ting] her to [. . .] waive her rights." However, the two interviews involved different crimes and different investigators, and Appellant invoked her right to silence with respect to the Jackson case months *after* her statement concerning Carter's murder. The rights-waiver form from the Jackson

16

interview would not, as trial counsel argued, have been relevant to show that Appellant was somehow harassed into providing her first statement; indeed, the form would have shown quite the opposite — namely, that despite previously agreeing to give a statement, she opted to invoke her right to silence when asked to provide a second one. Accordingly, the trial court did not abuse its discretion in concluding that the rights-waiver form was irrelevant to the question of the voluntariness of Appellant's statement concerning the murder.

5. Appellant next argues that the trial court erred by sentencing her for criminal attempt to commit murder on Count 23 and criminal attempt to commit armed robbery on Count 25. In her view, the rule of lenity requires that she be sentenced for aggravated assault on Count 23 and aggravated assault with intent to rob on Count 25 because the facts presented at trial also satisfy the elements of those offenses. The rule of lenity requires no such thing.

As we have explained before,

although the rule of lenity may require a court to reverse

a *conviction* based upon the violation of a statutory provision that has been effectively abrogated by a duplicative provision imposing a lesser penalty, the rule does not allow the court to impose a *sentence* for an offense different than the one unambiguously provided for in the statute of which the defendant was found guilty. Here, [Appellant] was not charged with or convicted of [aggravated assault or] aggravated assault with intent to rob, and [she] has not challenged [her] prosecution for [attempted murder or] attempted armed robbery. Instead, [she] was convicted of [criminal attempt to commit murder and] criminal attempt to commit armed robbery and was sentenced accordingly. Thus, the trial court did not err.

(Punctuation and footnote omitted; emphasis omitted) *Davis v. State*, 306 Ga. 140, 143 (829 SE2d 321) (2019) (quoting *State v. Hanna*, 305 Ga. 100, 105 (2) (823 SE2d 785) (2019)). Accordingly, this claim is without merit.

6. Finally, Appellant asserts that her trial counsel was constitutionally ineffective in eight different ways; the trial court concluded that Appellant had demonstrated neither deficient performance nor prejudice. We agree with the trial court's assessment that Appellant is not entitled to relief.[4]

---

[4] Appellant puts forth no meaningful argument regarding prejudice with

To succeed on her claims, Appellant must show both that her trial counsel's performance was deficient and that she suffered prejudice as a result of counsel's deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). "To prove deficient performance, Appellant must show that [her] lawyer performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). Appellant must also show that "the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious that they likely affected the outcome of the trial." *Jones v. State*, 305 Ga. 750, 755 (4) (827 SE2d 879) (2019). "[S]atisfaction of this test is a difficult endeavor. Simply because a defendant has shown that [her] trial counsel performed

respect to her eight claims of ineffectiveness. Instead, Appellant "cites, without comment or differentiation, 14 cases for [her] general assertion that failure to object to objectionable testimony 'can establish ineffective assistance of counsel.'" *Koonce v. State*, 305 Ga. 671, 673 (827 SE2d 633) (2019). We note that "this Court is not required to scour the record for support for an appellant's arguments." *Davis*, 306 Ga. at 144.

deficiently does not lead to an automatic conclusion that [she] was prejudiced by counsel's deficient performance." *Davis*, 306 Ga. at 144 (3). And "[i]f an appellant is unable to satisfy one prong of the *Strickland* test, it is not incumbent upon this Court to examine the other prong." (Citation and punctuation omitted.) Id. at 143 (3).

(a) Appellant argues that trial counsel should have objected when an investigator testified that she identified Appellant using a "jail database." According to Appellant, trial counsel's failure to object permitted the "introduction of improper character evidence." However, this passing and non-responsive reference to Appellant's personal information being included in a jail database did not amount to improper character evidence, and trial counsel's failure to object does not amount to deficient performance. See *Babbage v. State*, 296 Ga. 364 (4) (d) (768 SE2d 461) (2015) ("[I]t is well established that a witness' passing reference to a defendant's past criminal record — particularly when it is not responsive to the question posed — does not improperly place his character in issue."). Moreover, even if trial counsel should have objected, Appellant has

made no showing that the passing reference had any impact on the outcome of her trial given the overwhelming evidence of her guilt. See id. at 370.

(b) While in jail, Appellant wrote a letter to Owens asking him to convince Knight not to testify at trial. At trial, the State had Owens read the letter aloud and then had it admitted into evidence; later, the State had a second witness (an investigator) read the letter aloud while it was displayed by a digital projector for the jury. Appellant contends that trial counsel failed to object to this "needlessly cumulative" presentation of evidence.

As an initial matter, it is not at all clear that the testimony was cumulative. The transcript reflects that Owens had a difficult time reading the letter — both due to the handwriting and the physical condition of the letter — and it is not at all obvious that the entirety of the letter was accurately read to the jury. The latter reading and presentation of the letter appears to have been more complete and accurate. Further, Appellant makes no showing that having a second witness read the letter while it was displayed on a screen

21

affected the outcome of her trial. The letter did not directly implicate Appellant in the charged offenses, the evidence against Appellant with respect to Knight was strong, and the letter, as admitted into evidence, would have been provided to the jury for its consideration during deliberations.

(c) Appellant next contends that trial counsel was ineffective for failing to object when Knight "speculated" that he was being robbed by Appellant and Mosley, though no verbal demand for property was made. However, Knight's testimony was "rationally based on [his] perception and helpful to understanding [his] testimony." (Citation and punctuation omitted.) *Grier v. State*, 305 Ga. 882, 885 (828 SE2d 304) (2019). See also OCGA § 24-7-701 (a). Even though there was no verbal demand for property, Knight's perception that he was being robbed was rationally based on his interaction with Appellant and then being held at gunpoint and told not to move. Id. Accordingly, the testimony was proper and there was no cause for objection.

(d) During trial, a detective summarized a statement provided

by Knight at the time that he identified Appellant from a photographic lineup, testifying as follows:

> When [Knight] identified the photograph of [Appellant], he identified her as the female he had been in phone contact with, that had asked him to come over to Cornwall Street, and to bring the $50. And then approached his passenger door, to which he opened, and she stood in the doorway. And as she stood there, immediately the male approached with the gun, told him not to move, and then he pulled off and shots were fired.

Appellant complains that trial counsel was ineffective for failing to lodge a hearsay objection. However, at the time the detective testified, Knight had already given extensive testimony concerning the events in question (and had been thoroughly cross-examined), and, further, a different investigator had already provided substantially similar testimony concerning Knight's statement to law enforcement. Accordingly, this testimony was cumulative of evidence already presented to the jury, and "[t]rial counsel was not deficient in failing to object to the cumulative testimony of [the] [d]etective" on this matter. *Koonce v. State*, 305 Ga. 671, 676 (827 SE2d 633) (2019). See *Miller v. State*, 296 Ga. 9 (4) (b) (764 SE2d

823) (2014) (trial counsel not ineffective for failing to object to hearsay testimony where it was cumulative of other testimony already before the jury). Further, because the evidence tying Appellant to this incident was strong — including telephone records, an eyewitness account, and physical evidence — Appellant cannot demonstrate prejudice.

(e) Appellant next complains that trial counsel failed to object when an investigator "identified" Appellant in a surveillance video and related still photographs. Specifically, Appellant claims that the investigator's identification was improper because it was made by photographic comparison rather than any "prior familiarity with [Appellant]." This claim fails for two reasons. First, the testimony about which Appellant complains relates to how the investigator identified Appellant in the surveillance video *during the course of her investigation*; indeed, at the time of trial, the investigator had arrested, met with, and interviewed Appellant about the murder, and there is no argument that the investigator was incapable of making a lawful identification of Appellant. Second, at the time the

investigator testified, Appellant had already been identified as being in the surveillance video by her cousin, Singleton, and a still photograph from the video had already been admitted into evidence; as such, the evidence was merely cumulative of that already before the jury. See *Miller*, supra.

Moreover, the surveillance-video evidence pertained to the investigation of Carter's murder and the identification of Appellant as a suspect; however, Appellant's identity with respect to Carter's murder (and her presence in the surveillance video) was hardly in doubt. Appellant made numerous admissions regarding her involvement in Carter's murder — to her cousin, to law enforcement, and in her jailhouse letters; she placed herself at the location where the surveillance video was taken; and DNA evidence connected her to the crime. As such, there is also no prejudice.

(f) The State successfully admitted a number of jailhouse letters written by Appellant to Mosley; an investigator testified during trial that, in one of those letters, Appellant was "coaching" Mosley and "telling him what to say" with respect to Carter's

25

murder. Appellant contends that trial counsel should have objected, as it was improper for the investigator to "draw inferences or express conclusions that the jurors should and can draw for themselves." This claim, like the others, fails because Appellant cannot demonstrate prejudice.

In the letter at issue, Appellant admits to Mosley that she made a statement to police concerning the murder, attempts to minimize the import of her inculpatory statement, and begs Mosley for forgiveness; she also tells Mosley what she supposedly told police and advises him to claim self-defense. However, the jury learned that the letter did not accurately recount what Appellant had told investigators. Further, though the letter advises Mosley that he should claim self-defense, Appellant had, in fact, already implicated both of them in the armed robbery and murder of Carter. Finally, Mosley did not testify at Appellant's trial, Appellant did not pursue a self-defense theory at trial, the letter at issue was admitted into evidence for the jury's consideration during deliberation, and the evidence against Appellant concerning Carter's murder was

overwhelming. Accordingly, trial counsel's failure to object to the investigator's characterization of Appellant's letter did not affect the outcome of the trial.

(g) During trial, an investigator testified that Carter should have had a wallet in his possession at the time he was murdered. Appellant complains that the investigator had no independent knowledge of this fact — having only learned it from Carter's wife – and that trial counsel should have objected to this testimony. Again, the evidence implicating Appellant in the crimes against Carter, including armed robbery, was overwhelming, and, thus, Appellant cannot demonstrate that she was prejudiced by trial counsel's failure to object to this snippet of testimony.

(h) Appellant contends that trial counsel was ineffective for failing to object when an investigator, who was discussing Singleton's telephone records, testified that the records "appeared" to show Appellant "shopping for her next victim." Again, even presuming that trial counsel should have objected to this "opinion" testimony, Appellant cannot demonstrate prejudice from this

27

passing comment given the overwhelming evidence presented at trial that, on multiple occasions, Appellant contacted men by telephone to set them up for theft or robbery.

(i) Finally, the cumulative prejudice from any assumed deficiencies discussed in Division 6 is insufficient to show a reasonable probability that the results of the proceedings would have been different in the absence of the alleged deficiencies. The evidence against Appellant was considerable with respect to each of her convictions and included multiple admissions, eyewitness accounts, DNA evidence, and physical evidence connecting Appellant to the crime spree. See *Jones*, 305 Ga. at 757 (4) (e).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 7, 2019.
Murder. Chatham Superior Court. Before Judge Abbot.
*Steven L. Sparger*, for appellant.
*Meg E. Heap, District Attorney, Christine S. Barker, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B.*

*Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General*, for appellee.