**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

June 23, 2020

# In the Court of Appeals of Georgia

A20A0229. PARHAM v. THE STATE.

MCFADDEN, Chief Judge.

After a jury trial, Triston Parham was convicted of aggravated assault, armed robbery, and possession of a firearm during the commission of a felony. The trial court sentenced Parham to serve a 45-year term of incarceration. Parham appeals the denial of his motion for new trial, raising four arguments.

Parham argues that the evidence does not support his convictions, but we hold that the jury was authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt. Parham argues that the trial court erred in admitting evidence of three other acts, but we hold that the trial court did not abuse his discretion as to two of them and any error in admission of the third was harmless. Parham argues that his trial counsel rendered ineffective

assistance, but we hold that Parham has failed to show both deficient performance and prejudice. Finally, Parham argues that that the trial court plainly erred by giving an improper burden-shifting charge to the jury, but we hold that any error did not mislead the jury, given the charge as a whole. So we affirm.

1. *Evidence*.

Viewed in the light most favorable to support the jury's verdict, see *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the state's evidence showed that in a three-hour period on April 22, 2014, Parham and an accomplice engaged in a crime spree, committing or attempting to commit three armed robberies targeting Hispanic victims and Hispanic communities. The victim in the case on trial, who is from Honduras, testified that he was walking to work before six in the morning when a four-door, silver or gray car passed him, made a U-turn in the shipping area of his place of employment, and pulled up to the victim. A man got out of the car, approached the victim, brandished a black weapon, and demanded that the victim give him everything in the victim's possession. The victim and the man from the car began to fight. Another man, armed with a silver handgun, exited the car.

The two men assaulted the victim with a stun gun and he fell to the ground. The men took the victim's black cell phone, his boots, and about $120 in cash. The victim

ran to his workplace. One of the men followed the victim, threatening to kill him, but then retreated. The perpetrators left the scene of the crime and the police were contacted.

A police officer responded to a dispatch and met the victim at his workplace. The victim described the race, height, weight, and clothing of the perpetrators as well as the four-door car. But he was unable to identify the perpetrators in a photo line up.

Less than five hours later, the officer was patrolling the area when he saw a man he had arrested several times before leaning into a four-door, silver car and talking to the front passenger. As soon as the person leaning into the car saw the officer, he began to walk away. The officer walked up to the car and began speaking to Parham, who was in the driver's seat. Parham's accomplice was in the passenger seat. The officer asked Parham what the man wanted and told Parham that the area was a high-crime area. The officer asked for identification from the occupants of the car. Parham gave the officer his Georgia corrections card.

Parham consented to a search of the car. The officer opened the front passenger car door to begin a search when Parham revoked his consent. However, when he opened the door, the officer saw what appeared to be a marijuana cigarette. So the officer searched the car, where he found a silver revolver and a red wallet with a

3

woman's driver's license and financial documents in it. Parham told the officer that the revolver belonged to his accomplice and that a woman had left the wallet in the car the night before, but the name Parham gave him for the woman was not the name on the driver's license and the documents in the wallet. The officer subsequently learned that the owner of the red wallet had been the victim of an armed robbery that same day.

The officer arrested Parham and the accomplice. The officer searched Parham, who had about $300 worth of Mexican pesos on his person. The officer found the victim's black cell phone and a stun gun on the accomplice.

The state presented evidence of two crimes that occurred shortly after the crime for which Parham was being tried. Around 7:40 the same morning as the 6 a.m. robbery of the victim here, Parham had attempted an armed robbery of a Hispanic woman in a trailer park. The woman testified that when she was driving home from taking her child to school, a four-door, silver or gray car was blocking the road in her trailer park. A man in a neon green shirt approached her vehicle, asked her if she knew a particular person, told her to roll down her window, and then pointed a silver gun at her and demanded money or her purse. She said she did not have anything and to search her vehicle if he did not believe her. She got out of her vehicle, and the man

4

searched the victim's vehicle, did not find anything, and got into the passenger side of the silver or gray car. Another man was in the driver's seat.

The attempted armed robbery victim's neighbor happened to take photographs of the attempted armed robbery as it was happening, and the photographs showed Parham wearing a shirt and socks of the same distinctive, bright color as the shirt and socks that he was wearing at the time of his arrest. The victim was able to record the license plate number of the car, and that license plate was on the car Parham was occupying at the time of his arrest. The victim of the attempted armed robbery identified Parham as the perpetrator from a photo line up.

The owner of the red wallet found in the car from which Parham was arrested also testified. She testified that between 8:00 and 9:30 that same morning as the robbery at issue and the attempted armed robbery, she was returning to her predominately Hispanic trailer park from taking her children to school. Once she reached her trailer and was standing on her porch, she noticed a four-door, silver, white, or gray car.

A man exited the passenger side of the car, approached the victim, and asked whether she knew a particular person. He then pointed a "silver black" gun at her stomach and took her wallet, the same wallet that was found in the car when Parham

was arrested. The victim's husband opened the door and pulled her into the trailer, and the robber fled behind the trailer. The victim was able to identify the perpetrator from a photo line up.

The state also presented evidence of an armed robbery committed by Parham in 2004. The victim in that case testified that he was robbed at gunpoint when he went to see his daughter and ex-wife in a predominately Hispanic trailer park. As the victim waited outside for his daughter, a car with two men pulled up, one of the men jumped out of the passenger side of the car, pointed a rifle in the victim's face, and took some money. The victim called 911 and, within minutes, law enforcement officers saw the perpetrators' vehicle just after it left the trailer park. They pursued the vehicle, never losing sight of it. The officers were able to detain the occupants, one of whom was Parham. Parham was charged with armed robbery, aggravated assault, and obstruction.

"Questions about the reasonableness of other hypotheses in cases based on circumstantial evidence . . . are for the trier of fact to decide. . . . In such a case, the jury's finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law." *State v. Holmes*, 304 Ga. 524, 526 (1) (820 SE2d 26) (2018) (citations and punctuation omitted). Here, "[t]he evidence, though circumstantial, was sufficient

6

to exclude every reasonable hypothesis other than [Parham's] guilt . . . and for a rational trier of fact to find beyond a reasonable doubt that [Parham] was guilty of [the charged crimes]". *Carson v. State*, __ Ga. __, __ (1) (__ SE2d __) (Case No. S20A0288, decided May 18, 2020) (citations omitted). See also *Bradshaw v. State*, 296 Ga. 650, 652-653 (2) (769 SE2d 892) (2015) ("[I]n determining the sufficiency of the evidence, a reviewing court must consider all of the evidence admitted by the trial court, [including evidence of other acts,] regardless of whether that evidence was admitted erroneously.") (citation and punctuation omitted).

2. *The admission of the other acts evidence.*

Parham argues that the trial court committed reversible error by allowing the state to present evidence of the three other acts. We disagree.

We hold that two of the three other acts were intrinsic evidence because they were part of the crime spree and that their probative value outweighed any prejudice. We hold that any error in admitting evidence of the third other act was harmless.

(a) *Intrinsic evidence.*

We review decisions to admit evidence for a clear abuse of discretion. *Reeves v. State*, 294 Ga. 673, 676 (2) (755 SE2d 695) (2014). OCGA 24-4-404 (b) ("Rule 404 (b)") "generally controls the admission of other acts evidence, also know as

7

extrinsic evidence[.]" *Brown v. State*, 307 Ga. 24, 29 (2) (834 SE2d 40) (2019) (punctuation omitted). Rule 404 (b) provides that such extrinsic evidence of other acts "shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." But Rule 404 (b) does not apply

> where the evidence of other crimes, wrongs, or acts [is] intrinsic to the charged offense. Evidence is intrinsic if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense. Whether offered under Rule 404 (b) or as intrinsic evidence, the [trial] court must find that the probative value of the proffered evidence is not substantially outweighed by unfair prejudice and that it meets the other requirements of OCGA § 24-4-403 ('Rule 403').

*Brown v. State*, 350 Ga. App. 104, 108-109 (2) (a) (828 SE2d 110) (2019) (citations and punctuation omitted).

The crimes on trial and the other acts committed a few hours later were part of the same series of transactions; evidence of the other acts completed the story of the crimes on trial; and the other acts were inextricably intertwined with the crimes on

trial. So evidence of the other acts was intrinsic. The other acts and the crimes on trial were all part of a distinctive robbery spree. Parham committed the other acts within three hours of the crimes on trial, in the gap of time between the commission of the crimes on trial and Parham's arrest five hours later. The victim in this case is Hispanic, the victim in the attempted armed robbery is Hispanic, and the owner of the red wallet lived in a trailer park with almost all Hispanic residents. Photographs of the attempted armed robbery showed Parham wearing a shirt and socks of the same distinctive, bright color as the shirt and socks that he was wearing at the time of his arrest. The license plate on the car involved in the attempted armed robbery was the same license plate on the car Parham was occupying at the time he was arrested. The cell phone of the victim of the crime on trial and the stun gun used to assault him were found on the accomplice, who was in the car with Parham. The wallet of the victim of the other-act armed robbery was found in the car. The three victims' descriptions of the perpetrator's car matched the car Parham was driving at the time of his arrest. "[T]he evidence . . . was a link in the chain of events leading up to [Parham's arrest] and completed the story of the crimes for the jury." *Brown*, 307 Ga. at 29 (2). See also *United States v. Castro*, 795 Fed. Appx. 635, 652 (II) (E) (11th Cir. 2019) (evidence of other heists in defendant's robbery spree was intrinsic); *United*

9

*States v. Saunders*, 196 Fed. Appx. 873, 875-876 (11th Cir. 2006) ("evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if it is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury") (citation and punctuation omitted).

Further, given the inability of the victim of the crimes on trial to identify his assailants, "the probative value of evidence concerning [the other crimes] was not substantially outweighed by the danger of unfair prejudice. As such, the trial court did not abuse its discretion here." *Brown*, 307 Ga. at 30 (2).

(b) *Admission of third other act*.

The third other act the trial court allowed was the 2004 armed robbery. "[E]ven assuming that [this] evidence was improperly admitted, any such evidentiary error was harmless." *Howell v. State*, 307 Ga. 865, 875 (3) (838 SE2d 839) (2020).

Any error in the admission of the 2004 armed robbery "was evidentiary and not of constitutional dimensions, and the test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." *Jackson v. State*, 306 Ga. 69, 80 (2) (c) (829 SE2d 142) (2019) (citation and

10

punctuation omitted). See also OCGA § 24-1-103 (a) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"). "In determining whether the [alleged] error was harmless, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done so." *Jackson*, 306 Ga. at 80 (2) (c) (citation and punctuation omitted). The evidence of Parham's guilt aside from the 2004 armed robbery was strong. See *Edwards v. State*, __ Ga. __, __ (3) (839 SE2d 599) (2020) (pretermitting question of error in admission of other acts evidence where strong evidence of guilt made any such error harmless). It showed that Parham engaged in a three-hour crime spree targeting Hispanic people and communities. He was positively identified — and even photographed — in one of the crimes in the spree. He was arrested in a car that matched the descriptions given by the three victims in the spree (and with the license plate recorded by one of the victims). The weapon described by the three victims, the cell phone belonging to the victim of the instant crime, and the stun gun used on the victim were found in the car or on the accomplice, who was in the car.

> As to the potential harmful effect of the other acts evidence, the trial court instructed the jury extensively both before the [s]tate presented the evidence of the [2004] incident and again during the final charge [about the limited purpose of the other act evidence; that the jury

11

could not make inferences about Parham's character from the evidence; and that Parham was on trial only for the offenses charged in the indictment, not any other acts]. We ordinarily presume that jurors follow their instructions.

*Howell*, 307 Ga. at 875 (3). "Considering all of these circumstances, we conclude that it is highly probable that the admission of the [2004 other acts] evidence, even if erroneous, did not contribute to the jury's guilty verdicts." Id. at 876 (3).

3. *Effective assistance of counsel.*

Parham argues that trial counsel was ineffective for failing to object to the state's opening statement and closing argument; for failing to object to and move for a mistrial because of hearsay in the arresting officer's testimony; and for failing to object to testimony that implicated his character. To prevail on these claims, Parham "must show that counsel's performance was deficient and that the deficient performance so prejudiced [him] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different." *Puckett v. State*, 342 Ga. App. 518, 525 (2) (804 SE2d 648) (2017) (citation omitted). Because Parham must show both deficient performance and prejudice, "an insufficient showing on either of these prongs relieves the reviewing court of the need to address the other

12

prong." Id. (citation and punctuation omitted). We hold that Parham has not shown both deficient performance and prejudice for any of his claims.

(a) *Failure to object to the state's improper arguments.*

(i) *Alleged golden rule violations*.

Parham argues that the prosecutor twice violated the "golden rule," which forbids any argument "that, regardless of the nomenclature used, asks the jurors to place themselves in a victim's position[,]" *Braithwaite v. State*, 275 Ga. 884, 885 (2) (b) (572 SE2d 612) (2002) (footnote omitted), and that trial counsel performed deficiently by failing to object.

The first instance about which Parham complains occurred in the prosecutor's opening statement. The prosecutor began as follows: "I woke up this morning. I got dressed. I drove to work. I got my things. I came to court unharmed, unbothered. Everyone in this room got up this morning. We all passed the 6:00 a.m. hour. We may have had traffic issues, but we're all in this room unharmed." This argument did not ask the jurors to place themselves in the victim's position, and thus was not an impermissible golden rule argument. *Ledford v. State*, 289 Ga. 70, 86 (17) (709 SE2d 239) (2011) (argument asking the jury to think about the unpleasant way in which the victim had died did not violate the golden rule), disapproved in part on other grounds

13

in *Willis v. State*, 304 Ga. 686, 706 n. 3 (11) (a) (820 SE2d 640) (2018). So "the failure to object . . . could not have been patently unreasonable, and [Parham] has not shown ineffective assistance in this regard." *Faust v. State*, 302 Ga. 211, 220 (4) (c) (805 SE2d 826) (2017) (prosecutor's urging jurors to speak on behalf of the community was not an impermissible golden rule argument).

The second instance about which Parham complains occurred in the prosecutor's closing argument. Referring to the victim whose wallet was stolen, the prosecutor said,

> remember 6:00, 8:00, 9:00, 10:44. We've gone through 6:00. We've gone through 8:00. We now move to the 9:00 o'clock hour. And you heard the evidence, and she tells you — this is [the victim with the wallet]. Now, what I think you all get from her is that she was authentic. She kept it 100 percent real. She was more concerned with how is she going to be able to feed her kids at the point of being robbed, and also trying to make sure that her babies on the inside would not come out during this altercation. Ladies and gentlemen of the jury, put yourself in that mind frame. She said I had to feed my kids because my kid had his money in it; that was his.

 "Pretermitting whether [the statement "put yourself in that mind frame"] would have given rise to a valid objection at trial, we find, given the isolated nature of [the] remark[] and the wide latitude afforded counsel in closing argument, that trial counsel

14

did not perform in an objectively unreasonable manner in failing to object thereto, nor did [Parham's] defense suffer prejudice therefrom." *Favors v. State*, 296 Ga. 842, 847 (4) (b) (770 SE2d 855) (2015) (inviting jurors to "imagine what would be going through their minds, [the murder victim's] mind"). This is particularly true given the trial court's instructions that the jurors were not "to show favor or sympathy to one party or other" but instead were "to consider the facts objectively, without favor, affection, or sympathy to either party." See *Mosley v. State*, 295 Ga. 123, 125 (2) (757 SE2d 828) (2014) (assuming trial counsel performed deficiently by not objecting to alleged golden rule argument, there was no prejudice in light of the strength of the evidence of appellant's guilt and of the trial court's charge to the jury that it was to base its verdict on the evidence and the law given in the court's charge and not on "favor, affection, or sympathy to either party.").

(ii) *Use of the word "racism."*

Parham argues the prosecutor called him a racist in his opening statement, and trial counsel was ineffective for failing to object.

After stating that the evidence would show that Parham "went on an armed robbery spree, targeting the Hispanic community," the prosecutor stated: "This case is about racism. Now, many of you may be surprised or maybe even raise an eyebrow.

15

Why am I talking about racism? Because that's who the victim is in this particular case, racism that has impacted one individual, starting at 6:00 a.m. on 24 April 22nd."

Trial counsel did not object, but he later moved for a mistrial because of the reference to racism. The trial court admonished the prosecutor that although he could argue that the evidence showed Parham targeted Hispanic people and communities, he could not refer to racism again. The court warned the prosecutor that "I'll dress you down in front of the jury if this happens during closing statements." The prosecutor did not mention racism again.

Assuming that trial counsel's failure to object to the prosecutor's use of the word "racism" in his opening statement amounts to deficient performance, we hold that Parham has not shown prejudice. The state's theory in this case was that Parham and his accomplice engaged in a crime spree targeting Hispanic people and communities. It introduced evidence to support this theory, including that, as the victim's assailants retreated, one of them said to the victim, "Mexican, why are you here?"

Before opening statements, the trial court instructed the jury that an opening statement is not evidence and what the lawyers say is not evidence. In his final charge, the trial court reiterated that opening statements are not evidence. So "even

if it was error for [Parham's] counsel not to object [to the prosecutor's use of the word "racism" in his opening statement], there is no reasonable likelihood that the outcome of the trial would have been different if he had objected." *Simmons v. State*, 291 Ga. 705, 714 (10) (d) (733 SE2d 280) (2012). See also *Perera v. State*, 295 Ga. 880, 884 (3) (a) (763 SE2d 687) (2014) (defendant, who was Mexican, did not demonstrate harm from counsel's failure to object to prosecutor's racial comments about Mexican people during opening statement).

(b) *Hearsay*.

Parham argues that trial counsel was ineffective for failing to object or move for a mistrial to two instances of hearsay in the arresting officer's testimony.

The first instance occurred when the arresting officer testified that another officer told him that an armed robbery victim had been robbed of a large amount of pesos. (The arresting officer had found the same amount of pesos on Parham's person.) Counsel did object to this testimony on hearsay grounds and the trial court sustained the objection, but Parham argues that trial counsel should have moved for a mistrial.

The record shows that the trial court had granted the state's motion to introduce evidence of the armed robbery in which the victim was robbed of pesos, although, in

17

the end, the state did not present that evidence. So at the time he objected to the officer's testimony on hearsay grounds, it was reasonable for trial counsel to anticipate that the victim robbed of pesos would testify. And trial counsel testified at the motion for new trial hearing that he did not believe the officer's testimony justified moving for a mistrial. Parham "has not shown either that counsel's tactical decision not to move for a mistrial was outside the range of reasonably effective assistance or that a mistrial would have been granted but for counsel's decision to forego requesting one." *Sweet v. State*, 278 Ga. 320, 325 (8) (602 SE2d 603) (2004).

The second instance of hearsay about which Parham complains is the arresting officer's testimony that the wallet discovered in the car occupied by Parham and his accomplice had been stolen in an armed robbery. Counsel's failure to object to this testimony did not prejudice Parham because the victim of that armed robbery testified at trial and identified the wallet as hers. "Given the cumulative nature of this evidence, the failure to object to the officer's testimony . . . does not amount to deficient performance." *Rosser v. State*, __ Ga. __, __ (4) (__ SE2d __) (Case No. S20A0103, decided May 4, 2020).

(c) *Failure to object to character evidence.*

Parham argues that trial counsel performed deficiently by failing to object to two instances of character evidence. Parham argues that the arresting officer's testimony that the area where Parham was arrested was known for prostitution, drug sales, and drug consumption improperly implicated his character. Trial counsel testified at the motion for new trial hearing that he did not see the testimony as referencing Parham's character but instead saw it as being offered to explain why the arresting officer was in the area in the first place. Given trial counsel's reasonable understanding of the testimony, his failure to object was not deficient. See *Griffin v. State*, 266 Ga. App. 50, 52 (2) (596 SE2d 405) (2004) (no error where trial court allowed state's witness to testify that area where the crime occurred was "high crime area," because "the statements did not suggest that the [defendant] had himself been involved in any previous criminal misconduct at that or any other location") (citation and punctuation omitted).

Parham argues that trial counsel should have objected when the arresting officer testified that Parham gave him a Georgia corrections card as identification. "However, this passing . . . reference . . . did not amount to improper character evidence, and trial counsel's failure to object does not amount to deficient performance." *Brown v. State*, 307 Ga. 24, 33 (6) (a) (834 SE2d 40) (2019).

19

(d) *Cumulative effect of alleged deficiencies.*

We have considered the cumulative effect of the alleged deficiencies of counsel and "conclude that they do not establish a reasonable probability that the result of [Parham's] trial would have been different in the absence of the deficiencies alleged." *Bentley v. State*, 307 Ga. 1, 11 (2) (d) (834 SE2d 549) (2019).

4. *Jury charge.*

Parham argues that the trial court committed plain error in charging the jury. He points to the following two sentences in the charge: (1) "However, the state is not required to prove the guilt of the accused beyond a reasonable doubt or to a mathematical certainty."; and (2) "If you do not believe that defendant is guilty of any of these offenses, or if you have reasonable doubt as to defendant's guilt, then you would be authorized to acquit the defendant, in which event the form of your verdict would be, 'We, the jury, find the defendant not guilty.'"

Because Parham's claim is reviewed for plain error, "we will reverse the trial court only if the instructional error was not affirmatively waived, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Herrington v. State*, 300 Ga. 149, 151 (2) (794 SE2d 145) (2016) (citation and

20

punctuation omitted). "[G]iven the trial court's repeated instructions as to the [s]tate's burden of proof in this case, we do not believe there is a reasonable possibility that the court's apparent slip of the tongue [that the 'state is not required to prove the guilt of the accused beyond a reasonable doubt'] misled the jury as to the degree of proof necessary for conviction or acquittal." *Burns v. State*, 246 Ga. App. 383, 384 (1) (540 SE2d 640) (2000). See also *Hollis v. State*, 97 Ga. App. 145, 147-148 (4) (102 SE2d 610) (1958) (use of phrase "authorized to acquit" is inapt as "jury has no discretion but is under the duty to acquit or convict according to whether or not the [s]tate has carried its burden of proving the guilt of the accused beyond a reasonable doubt," but was not prejudicial in view of charge as a whole).

*Judgment affirmed. Doyle, P. J., and Hodges, J., concur*.